JOHN SAULENAS & another *vs.* MAURICE PENN.

Essex.    April 4, 1933. — September 10, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Bills and Notes,* Joint payees, Payment. *Husband and Wife. Agency,* What constitutes. *Payment. Fiduciary.*

One of two or more payees named in a bill of exchange or note may receive payment of it and discharge the entire claim.

At the hearing of an action by a husband and wife, payees of a promissory note, against one of the two makers thereof, who signed it for accommodation of the other maker, there was evidence warranting a finding that, after the note became due, the wife in an interview with the maker primarily liable received from him a new note signed by him only, payable to the husband only and for a balance still due on the old note, and that maker then requested and received from the wife the old note, which was torn up in her presence. The husband on the same day learned what had taken place. Nothing further was done by either the husband or by the wife for two years. There was evidence that, while the wife could not speak nor read the English language, the maker of the new note spoke her native tongue. There was no evidence of fraud. The trial judge found for the defendant. *Held,* that

(1) It was proper for the judge to refuse to rule that "a wife who is a joint payee with her husband, in a promissory note which is joint or joint and several, is not an agent of her husband with implied power to release or discharge one of the two joint promissors, and may not discharge one of two joint promissors unless expressly authorized by her husband";

(2) The evidence did not require a finding of ignorance, mistake or misunderstanding on the part of the plaintiffs of the significance of what occurred;

(3) Whether the evidence controlled the inference of payment of the old note arising from the acceptance of the new note, was a question of fact; the judge's finding for the defendant was warranted and determined that question in the defendant's favor.

At the hearing of the action above described, it appeared that the one who was the primary maker of the old note and the maker of the new note was a physician and, at the time the old note was given, was attending the plaintiff wife. The judge ruled that "one in a fiduciary relationship owes a duty to disclose all material facts to her whose confidence he possesses"; refused to rule that "if the court finds as a fact that" the wife "was a patient" of the physician "at the time of the alleged transactions" he "stood in a fiduciary relationship to her"; and found that at the time the new note was given the wife was not his patient and that there was no fiduciary relation between them. *Held*, that no error was shown in the refusal to rule as requested.

CONTRACT. Writ in the District Court of Lawrence dated March 4, 1931.

In the District Court, the action was heard by *Chandler*, J. Material facts found and rulings made and refused by him are stated in the opinion. He found for the defendant and reported the action to the Appellate Division for the Northern District. The report was ordered dismissed. The plaintiffs appealed.

The case was submitted on briefs.

*E. J. McVey*, for the plaintiffs.

*H. M. Siskind*, for the defendant Maurice Penn.

DONAHUE, J. The plaintiffs, who are husband and wife, in May, 1924, lent $1,000 to Dr. Henry S. Penn, and a note for that amount payable in one year signed by the doctor and his brother was at that time delivered to the plaintiffs. In 1931 they brought suit on the note to recover $800 as the unpaid balance of the principal, naming both makers as defendants. Shortly after August 3, 1928, Dr. Penn left the Commonwealth and has since resided in

California. No service on him was ever obtained and the suit has been prosecuted against his brother as the sole defendant. The case was tried before a judge of the District Court who found for the defendant and reported the case to the Appellate Division on rulings made and refused by him. An order dismissing the report was there entered and the plaintiffs have appealed.

Dr. Penn was a physician and in May, 1924, the female plaintiff was his patient. At that time he asked her and her husband for a loan of $1,000 and they agreed to make it if he and his brother, the defendant, would sign a note. The parties agree that the defendant was an accommodation party on the note which was given. Between that time and August 3, 1928, the principal sum named in the note had, by instalment payments, been reduced to $850. On that date the female plaintiff with the knowledge of her husband went to the doctor's office with the note to ask for its payment. No one was present but herself and the doctor. She was the only witness to testify as to what happened and her testimony includes little of the conversation then had. The doctor paid her $50 and then wrote out and signed a new note for $800 payable to the order of her husband. He gave it to her and asked for the old note. She gave it to him and he tore it up. It did not appear that she raised any question or made any objection to what was done. In fact the record is bare of any recital of the circumstances attendant on the acts above related which give them color or special or peculiar significance. The male plaintiff learned of these facts on the same day.

The plaintiffs' third request for a ruling, which was refused by the judge, was as follows: "a wife who is a joint payee with her husband, in a promissory note which is joint or joint and several, is not an agent of her husband with implied power to release or discharge one of the two joint promissors, and may not discharge one of two joint promissors unless expressly authorized by her husband." One of two or more payees named in a bill or note may receive payment of it and discharge the entire claim. *Dewey* v. *Metropolitan Life Ins. Co.* 256 Mass. 281, 284,

and cases cited. Each such joint promisee is by implication empowered to receive payment in behalf of the others and thus to terminate the rights of all in the instrument. Williston, Contracts, §§ 317, 343. By virtue of such implied power the female plaintiff as a joint payee with her husband could receive payment of the note and discharge the claim. It has long been held in this Commonwealth that where a negotiable promissory note is given by a debtor to his creditor for the same amount as a preëxisting contract indebtedness between them, the note is to be taken to be a payment of the debt unless a contrary intention of the parties appears which meets or controls such an inference. *Thacher* v. *Dinsmore,* 5 Mass. 299. *Ely* v. *James,* 123 Mass. 36, 42. *Green* v. *Russell,* 132 Mass. 536. *Quimby* v. *Durgin,* 148 Mass. 104. *Fratta* v. *Rossetti,* 277 Mass. 98, and cases cited. This is held to be so where the indebtedness alleged to have been paid is expressed in a promissory note. *Stebbins* v. *North Adams Trust Co.* 243 Mass. 69, 73, 74, and cases cited. *Dow* v. *Poore,* 272 Mass. 223. Whether the evidence in a particular case controls the inference of the payment of an earlier obligation by reason of the acceptance of a note is generally a question of fact to be determined by the tribunal charged with the duty of finding the facts. *Fratta* v. *Rossetti, supra.*

The judge gave in terms the plaintiffs' second request "That a destruction or cancellation of the promissory note, or a release of one of the joint promissors, made unintentionally or by mistake or by ignorance of what was actually done, or without the authority of both of the holders, is not a discharge," but essential facts assumed in the request were not found by him. He found that there was no evidence on which could be based a finding of any fraud on the part of Dr. Penn at the time the second note was given and the old one destroyed. The female plaintiff could not read or speak English but the doctor spoke her native tongue. There was no testimony that any representation of any sort, either true or false, was made by him. The new note was not accepted by her in ignorance of any material facts. She could, fairly, on the evidence, be held

to have known that whereas the first note, at the request of the plaintiffs, had been signed by the defendant as well as by the doctor, the second note, written and signed in her presence, bore only the doctor's signature. Her husband learned, on the same day, what had taken place. No demand was made by the plaintiffs on the defendant for the payment of the first note until more than two years after that note had been surrendered and the new one given. There is nothing in the evidence which compelled the finding of ignorance, or mistake or of a misunderstanding by the plaintiffs of the significance of what had been said and done. The question whether the second note was given and accepted as payment of the first was one of fact. It cannot here be said that there was no evidence to sustain the findings of the judge. *Rosen* v. *Shapiro,* 272 Mass. 277, 280. There was no error in the denial of the plaintiffs' third request for a ruling.

At the request of the plaintiffs the judge ruled that "one in a fiduciary relationship owes a duty to disclose all material facts to her whose confidence he possesses." He refused to give the plaintiffs' fifth request for a ruling, in substance, that "if the court finds as a fact that Mary Saulenas was a patient" of Dr. Penn "at the time of the alleged transactions" he "stood in a fiduciary relationship to her." The judge found that Mrs. Saulenas was a patient of the doctor at the time of the first transaction but was not his patient at the time of the second transaction. It is not contended that there was any fraud practised or undue influence exerted by the doctor at the time the first note was given. The duration or character of the illness for which the female plaintiff was at that time treated by the doctor, the length or character of the treatment and the extent of the actual trust and confidence which she then or thereafter reposed in him do not appear. On this phase of the case the burden was on the plaintiffs to prove that a relation of trust and confidence having its origin in a relationship of physician and patient was in existence at the time the second note was given. *Woodbury* v. *Woodbury,* 141 Mass. 329. *Colburn* v. *Hodgdon,* 241 Mass. 183, 192. The judge found

more than the mere fact that at the time of the giving of the second note the female plaintiff was not the patient of the doctor. He found that there was then no fiduciary relationship between them. This fairly is to be taken as a finding that the effect of the prior relationship of 1924 had not continued until 1928 and was not then operative so as to impose upon the doctor at that time the obligation which rests upon a physician transacting business with his patient. There is nothing in the record which required a contrary finding or a finding that the plaintiffs had sustained the burden of proof which was on them. By reason of the judge's findings of fact, there was no relationship of trust and confidence to be considered by him in making his ultimate finding. There was left only the question whether there was fraud practised by the doctor at the time the second note was given. As to this the judge found, as he was warranted in doing, that there was no evidence on which a finding of fraud could be made, and he therefore found for the defendant. There was no error in the refusal to give the plaintiffs' fifth request.

As we find no error in the rulings of law made, the finding for the defendant must stand.

*Order dismissing report affirmed.*